## Streit, Samantha

| | |
|---|---|
| **From:** | Hamraz, Shahrzad <shamraz@millerthomson.com> |
| **Sent:** | Thursday, August 6, 2026 3:09 PM |
| **To:** | O'Rourke, Jason |
| **Cc:** | Ellis, Larry |
| **Subject:** | Lola's Fine Sauces, Inc. v. EcoIdeas [MTDMS-LEGAL.FID14256727] |
| **Attachments:** | ECOIDEAS (Re).BK-26-03354672-0031.July.7.2026.RVO(94027834.1).pdf |

Dear Jason,

We act as counsel for 1001611870 Ontario Inc., the purchaser of the corporation formerly known as Ecoideas ("**Ecoideas**").

As you are aware, Ecoideas has undergone a restructuring pursuant to an Approval and Reverse Vesting Order ("**RVO**") dated July 9, 2026, a copy of which is attached to this email. The RVO provided for (among other things) the sale of the shares of Ecoideas, and the vesting of certain liabilities into a residual corporation ("**ResidualCo**"), which we understand to be deemed bankrupt effective July 21, 2026.

Pursuant to the RVO, all Claims, which are defined in the Subscription Agreement as "any civil, criminal administrative, regulatory, arbitral or investigative inquiry, action, suit, investigation or proceeding and any claim of any nature or kind (including any cross-claim or counterclaim), demand, investigation, audit, chose in or cause of action, suit, default, assessment, litigation, prosecution, third party action, arbitral proceeding or proceeding, complaint or allegation, by or before any Person" are vested in ResidualCo. This includes the litigation between Lola's Fine Sauces, Inc and Ecoideas, which will be subject to any eventual claims process in the bankruptcy.

As a result, Ecoideas has no further involvement in this matter. Any claims or questions regarding the same should be directed to Dodick Landau as proposal trustee of ResidualCo.

Best regards,

Shahrzad

**SHAHRZAD HAMRAZ**
**Associate**

Pronouns: She, Her, Hers

**MILLER THOMSON LLP**

Scotia Plaza
40 King Street West, Suite 6600
Toronto, Ontario | M5H 3S1
**T** +1 416.595.8533
shamraz@millerthomson.com



Subscribe to our newsletters

You can subscribe to Miller Thomson's free electronic communications, or unsubscribe at any time.

CONFIDENTIALITY: This e-mail message (including attachments, if any) is confidential and is intended only for the addressee. Any unauthorized use or disclosure is strictly prohibited. Disclosure of this e-mail to anyone other than the intended addressee does not constitute waiver of privilege. If you have received this communication in error, please notify us immediately and delete this. Thank you for your cooperation.  This message has not been encrypted.  Special arrangements can be made for encryption upon request. If you no longer wish to receive e-mail messages from Miller Thomson, please contact the sender.

Visit our website at www.millerthomson.com for information about our firm and the services we provide.

Il est possible de s'abonner aux communications électroniques gratuites de Miller Thomson ou de s'en désabonner à tout moment.

CONFIDENTIALITÉ:  Ce message courriel (y compris les pièces jointes, le cas échéant) est confidentiel et destiné uniquement à la personne ou  à l'entité à qui il est adressé. Toute utilisation ou divulgation non permise est strictement interdite.  L'obligation de confidentialité et de secret professionnel demeure malgré toute divulgation.  Si vous avez reçu le présent courriel et ses annexes par erreur, veuillez nous en informer immédiatement et le détruire.  Nous vous remercions de votre collaboration.  Le présent message n'a pas été crypté.  Le cryptage est possible sur demande spéciale. Communiquer avec l'expéditeur pour ne plus recevoir de courriels de la part de Miller Thomson.

Pour tout renseignement au sujet des services offerts par notre cabinet, visitez notre site Web à www.millerthomson.com

Court File No. BK-26-03354672-0031
Estate File No. 31-3354672

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**[COMMERCIAL LIST]**

| | | |
|---|---|---|
| THE HONOURABLE | ) | TUESDAY, THE 7TH DAY |
| | ) | |
| | ) | |
| JUSTICE KIMMEL | ) | OF JULY 2026 |

**IN THE MATTER OF THE *BANKRUPTCY AND INSOLVENCY ACT,*
R.S.C. 1985, c. B-3, AS AMENDED**

**AND IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A
PROPOSAL OF ECOIDEAS INNOVATIONS INC.**

**APPROVAL AND REVERSE VESTING ORDER**

**THIS MOTION**, made by the Ecoideas Innovations Inc. (the "**Company**") for an orders, *inter alia*: (i) approving the stalking horse subscription agreement dated May 22, 2026, attached to the Affidavit of Rafic Sidani dated June 30, 2026 as <u>Exhibit "F"</u> (the "**Stalking Horse Agreement**"), made by and between the Company, as vendor, and 1001611870 Ontario Inc., as purchaser (the "**Purchaser**"), and the transactions and the Implementation Steps (*as defined in the Stalking Horse Agreement*) contemplated thereby (collectively, the "**Transaction**"); (ii) transferring and vesting all of the Company's right, title and interest in and to the Excluded Assets, Excluded Contracts and the Excluded Liabilities (*each as defined in the Stalking Horse Agreement*) to and in 1001661176 Ontario Inc. (the "**ResidualCo**"); (iii) vesting all of the right, title and interest in and to the Purchased Shares (*as defined in the Stalking Horse Agreement*) in and to the Purchaser free and clear of all claims and encumbrances; and, (iv) adding ResidualCo as an applicant in these NOI proceedings; (v) terminating the NOI proceedings in respect of the Company; and (vi) authorizing the post-closing bankruptcy of ResidualCo, was heard by this Honourable Court (the "**Court**") this day at 330 University Avenue, Toronto, Ontario.

- 2 -

**ON READING** the Affidavit of Rafic Sidani dated June 30, 2026 (the "**Rafic Affidavit**") and, the exhibits thereto, as well as the Third Report of the Proposal Trustee dated June 30, 2026 ("**Third Report**") and the appendices thereto, and the Affidavit of Sayan Navaratnam (on behalf of the Purchaser) dated July 6, 2026, **AND ON HEARING** the submissions of counsel for the Company, the Proposal Trustee, the Purchaser and such other parties listed on the participant information form and no one else appearing although properly served as appears from the affidavits of Amanda Adamo, sworn June 30, 2026 and July 2, 2026, filed:

**SERVICE**

1.     **THIS COURT ORDERS** that the time for service and filing of the notice of motion and the motion record is hereby abridged and validated so that this motion is properly returnable today and hereby dispenses with further service thereof.

**DEFINED TERMS**

2.     **THIS COURT ORDERS** that capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse Agreement.

**APPROVAL OF THE STALKING HORSE AGREEMENT AND TRANSACTION**

3.     **THIS COURT ORDERS** that the Stalking Horse Agreement and the Transaction are hereby approved; and, that the Company is hereby authorized and directed to enter into and execute the Stalking Horse Agreement and to perform all of its obligations under the Stalking Horse Agreement and to take such additional steps and execute such additional documents as may be necessary or desirable to effect the completion of the Transaction in the sequence provided for in the Stalking Horse Agreement, including, but not limited to: (i) the issuance by the Company of the Purchased Shares to the Purchaser, and (ii) the cancellation of all Equity Interests in the Company, other than the Purchased Shares.

4.     **THIS COURT ORDERS AND DECLARES** that this Order shall constitute the only authorization required to proceed with the Transaction (including, for certainty, the Implementation Steps) and that no shareholder, director or other approval shall be required in connection therewith.

**VESTING & REORGANIZATION**

5.    **THIS COURT ORDERS** that upon the delivery of a Proposal Trustee's certificate substantially in the form attached as Schedule "A" hereto (the "**Proposal Trustee's Certificate**") to the Company and the Purchaser (the "**Closing Time**"), the following shall occur and shall be deemed to have occurred in accordance with the Implementation Steps in the following sequence:

(a)    first, the directors and officers of ResidualCo shall be deemed to have resigned;

(b)    second, ResidualCo shall be added to these NOI proceedings as an applicant;

(c)    third, all of the Company's right, title and interest in and to the Excluded Assets, the Excluded Contracts, the Excluded Liabilities and the employment of the Terminated Employees shall be channelled to, be assumed by and vest absolutely and exclusively in ResidualCo, with all applicable Claims and Encumbrances continuing to attach thereto and to the Purchase Price with the same nature and priority as they had immediately prior to the transfer;

(d)    fourth, the Excluded Assets, Excluded Contracts, Excluded Liabilities and the employment of the Terminated Employees shall no longer be obligations of the Company, and (i) all of the Company's assets, licences, undertakings and properties of every nature and kind whatsoever and wherever situate, including property held in trust for the Company (collectively, the "**Retained Assets**"), and (ii) the Company, shall be and are hereby forever released and discharged from the Excluded Assets, Excluded Contracts, Excluded Liabilities and the employment of the Terminated Employees, and all related Claims and Encumbrances affecting or relating to the Retained Assets are hereby expunged and discharged as against the Retained Assets;

- 4 -

(e)     fifth, if necessary, Articles of Reorganization shall be filed by the Company with the Ontario Corporate Registry and shall be deemed effective as of the Closing Time;

(f)     sixth, in consideration of the Purchase Price, the Company shall issue the Purchased Shares to the Purchaser, and all of the right, title and interest in and to the Purchased Shares shall transfer and vest absolutely in the Purchaser, and the Retained Assets shall be retained by the Company free and clear of any and from any and all debts, liabilities, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise, including any and all encumbrances, security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by any Order granted in these NOI proceedings, or any other Order of this Court, and (ii) all charges, security interest or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario), or any other real or personal property registry system (all of which are collectively referred to as the "**Encumbrances**"); and

(g)     seventh, all outstanding Equity Interests in the Company, other than the Purchased Shares, including all options, conversion privileges, equity-based awards, warrants, securities, debentures, loans, notes or other rights, agreements or commitments of any character whatsoever that are held by any Person which are convertible or exchangeable for any securities of the Company or which require the issuance, sale or transfer by the Company of any shares or other securities of the Company and/ or the share capital of the Company, or otherwise relating thereto, shall be deemed

- 5 -

terminated and cancelled without consideration and the only Equity Interests that shall remain shall be the Purchased Shares; and

(h)    eighth, the Company shall cease to be an applicant in, or subject to, these NOI proceedings and ResidualCo shall remain subject to these NOI proceedings for purposes of administering the Excluded Assets, Excluded Contracts and Excluded Liabilities and completing the wind-down of ResidualCo.

6.    **THIS COURT ORDERS** that the Proposal Trustee shall file with the Court a copy of the Proposal Trustee's Certificate, forthwith after delivery thereof in connection with the Transaction.

**CLAIMS ATTACH TO PROCEEDS**

7.    **THIS COURT ORDERS** that for the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Purchased Shares, if any (the "**Proceeds**"), shall stand in the place and stead of the Retained Assets, and that from and after the delivery of the Proposal Trustee's Certificate, all Claims and Encumbrances shall attach to the Proceeds and Excluded Assets with the same priority as they had with respect to the Retained Assets immediately prior to the Transaction as if the Transaction had not occurred.

**IMPLEMENTATION STEPS**

8.    **THIS COURT ORDERS** that in completing the Transaction contemplated in the Implementation Steps, the Company is hereby authorized:

(a)    to execute and deliver any documents and assurances governing or giving effect to the Implementation Steps as the Company and the Purchaser, in their discretion, may deem to be reasonably necessary or advisable to conclude the Implementation Steps, including the execution of such deeds, contracts, or documents as may be contemplated in the Stalking Horse Agreement and all such deeds, contracts, or documents are hereby ratified, approved, and confirmed; and

(b)      to take such steps as are, in the opinion of the Company and the Purchaser, necessary or incidental to the implementation of the Implementation Steps.

9.      **THIS COURT ORDERS** that the Company be and is hereby permitted to execute and file articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Implementation Steps and that such articles, documents or other instruments shall be deemed to be duly authorized, valid and effective notwithstanding any requirement under federal or provincial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required under corporate law to effect the Implementation Steps.

10.      **THIS COURTS ORDERS** that the Registrar of the Company appointed pursuant to the *Business Corporations Act* (Ontario) is hereby authorized and directed to accept and receive any articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Implementation Steps contemplated in the Stalking Horse Agreement, filed by either the Company or ResidualCo as the case may be.

**PIPEDA**

11.      **THIS COURT ORDERS** that pursuant to section 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, the Company is authorized, permitted and directed to, at the Closing Time, disclose to the Purchaser all human resources and payroll information in the Company's records pertaining to past and current employees of the Company. The Purchaser shall maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner that is in all material respects identical to the prior use of such information by the Company.

**POST-CLOSING MATTERS**

12.      **THIS COURT ORDERS** that upon delivery of the Proposal Trustee's Certificate, and upon filing of a copy of this Order together with any applicable registration fees, all

governmental authorities and any other applicable registrar or government ministries or authorities exercising jurisdiction with respect to the Retained Assets, business or operations (collectively, the "**Governmental Authorities**") are hereby authorized, and requested to accept delivery of a copy of the Proposal Trustee's Certificate and a copy of this Order as though they were originals and to enter into records, make, amend or discharge such registrations and transfers of interests as the Purchaser or the Proposal Trustee may require to give effect to the terms of this Order and the Stalking Horse Agreement. Presentment of a copy of this Order and a copy of the Proposal Trustee's Certificate shall be the sole and sufficient authority for the Governmental Authorities to enter into records, make, amend or discharge registrations and transfers of interests as required by this paragraph, including, without limitation, to effect the discharge of the Claims and Encumbrances as against the Retained Assets, including any registrations against the Company pursuant to the *Personal Property Security Act* (Ontario) or any similar legislation.

13. **THIS COURT ORDERS** that except to the extent expressly contemplated by the Stalking Horse Agreement, all Retained Contracts (for greater certainty, excluding the Excluded Contracts) to which the Company is a party, upon delivery of the Proposal Trustee's Certificate, will be and remain in full force and effect upon and following delivery of the Proposal Trustee's Certificate and no individual, firm, corporation, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

    (a)    any event that occurred on or prior to the delivery of the Proposal Trustee's Certificate and is not continuing that would have entitled such Person to enforce those rights or remedies (including defaults or events of default arising as a result of the insolvency of any Company);

- 8 -

(b)     the insolvency of the Company or the commencements of these NOI proceedings;

(c)     any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations or other steps taken or effected pursuant to the Stalking Horse Agreement, the Transaction or the provisions of this Order, or any other Order of the Court in these Proceedings; or

(d)     any transfer or assignment, or any change of control of the Company arising from the implementation of the Stalking Horse Agreement, the Transaction or the provisions of this Order.

14.     **THIS COURT ORDERS**, for greater certainty, that (a) nothing in paragraph 13 hereof shall waive, compromise or discharge any obligations of the Company in respect of any Assumed Liabilities, and (b) the designation of any Claim as an Assumed Liability is without prejudice to the Company's right to dispute the existence, validity or quantum of any such Assumed Liability, and (c) nothing in this Order or the Stalking Horse Agreement shall affect or waive the Company's rights and defences, both legal and equitable, with respect to any Assumed Liability, including, but not limited to, all rights with respect to entitlements to set offs or recoupments against such Assumed Liability.

15.     **THIS COURT ORDERS** that from and after the Closing Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, indirectly, derivatively or otherwise, and including without limitation, administrative hearings, arbitrations, mediations, and orders, declarations and assessments, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Company or the Retained Assets relating in any way to the Transaction or in respect of any Excluded Assets or Excluded Liabilities and any other claims, obligations and other matters that are waived, released, expunged or discharged pursuant to this Order.

16.  **THIS COURT ORDERS** that from and after the Closing Time:

(a)  the nature of the Retained Liabilities retained by the Company, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Transaction or this Order;

(b)  the nature of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to ResidualCo;

(c)  any Person that prior to the Closing Time had a valid right, Claim or Encumbrance against the Company under or in respect of any Excluded Contract or Excluded Liability (each an "**Excluded Liability Claim**") shall no longer have such right, Claim or Encumbrance against the Company but will have an equivalent Excluded Liability Claim against ResidualCo in respect of the Excluded Contract or Excluded Liability from and after the Closing Time in its place and stead, and nothing in this Order limits, lessens or extinguishes the Excluded Liability Claim of any Person as against ResidualCo; and

(d)  the Excluded Liability Claim of any Person against ResidualCo following the Closing Time shall have the same rights, priority and entitlement as such Excluded Liability Claim had against the Company prior to the Closing Time.

**RESIDUALCO & THE NOI PROCEEDINGS**

17.  **THIS COURT ORDERS** that, for greater certainty, from and after the Closing Time, the Company shall cease to be an applicant under these NOI Proceedings; and, the Company shall be deemed to be released from the purview of any order of this Court granted in respect of these NOI Proceedings, except the releases and protections afforded the Company in this order.

18.  **THIS COURT ORDERS** that from and after the Closing Time:

(a)  ResidualCo shall be a company to which the BIA applies; and

- 10 -

(b)     ResidualCo shall be added as the applicant in these NOI Proceedings and all references in any Order of this Court in respect of these NOI Proceedings to (i) the "applicant" or the "Company" shall refer to ResidualCo, and (ii) "Property" shall include the current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof, of ResidualCo.

19.    **THIS COURT ORDERS** that, from and after the Closing Time, the title of these proceedings is changed to:

> IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL OF 1001661176 ONTARIO INC., OF THE CITY OF TORONTO, IN THE PROVINCE OF ONTARIO

and, for greater certainty, shall be continued under the. Court File No. BK-26-03354672-0031 and Estate File No. 31-3354672.

20.    **THIS COURT ORDERS** that any directors or officers of ResidualCo are authorized and directed to execute all documents and perform all acts necessary to effect such assignment in bankruptcy and no shareholder approval shall be required in connection therewith.

**RELEASES**

21.    **THIS COURT ORDERS** that effective as of the Closing Time, the current and former directors, officers, employees, consultants, legal counsel and advisors of the Company, ResidualCo, the Proposal Trustee and their respective current and former directors, officers, employees, legal counsel and advisors (collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims, liabilities, obligations, indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, losses, costs, expenses, accounts, liens and other recoveries of any nature or kind whatsoever, whether known or unknown, direct or indirect, absolute or contingent, accrued or unaccrued, matured or unmatured, existing or hereafter arising, based in whole or in part on any act, omission, transaction, dealing or occurrence existing or taking place on or prior to the Closing Time and arising from, relating to, or in connection with: (a) the restructuring of the Company and the

business; (b) the Transaction; (c) the Stalking Horse Agreement; (d) the implementation of the Transaction and the Implementation Steps; and (e) the conduct of the business and affairs of the Company and ResidualCo in connection with the Transaction and these NOI proceedings (collectively, the "**Released Claims**").

22.    **THIS COURT ORDERS** that the Released Claims are hereby fully, finally, irrevocably and forever waived, released, discharged, cancelled and barred as against the Released Parties, provided that nothing herein shall release, waive or discharge: (a) any claim that is not permitted to be released pursuant to section 50(14) of the BIA; or (b) any claim against a Released Party arising from an act or omission that constitutes gross negligence, wilful misconduct or fraud.

**GENERAL**

23.    **THIS COURT ORDERS** that, notwithstanding:

(a)    the pendency of these proceedings;

(b)    any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, R.S.C 195, c. B-3, as amended (the "**BIA**"), in respect of the Company or ResidualCo and any bankruptcy order issued pursuant to any such applications; and

(c)    any assignment in bankruptcy made in respect of the Company or ResidualCo

the Stalking Horse Agreement, the implementation of the Transaction (including without limitation the transfer and vesting of the Excluded Assets and Excluded Liabilities in and to ResidualCo, and the issuance of the Purchased Shares) and any payments by or to the Purchaser authorized herein or pursuant to the Stalking Horse Agreement shall be binding on any trustee in bankruptcy that may be appointed in respect of the Company and/or ResidualCo, and shall not be void or voidable by creditors of the Company or ResidualCo as applicable, nor shall they constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the BIA or any other applicable federal or provincial legislation or similar legislation

of any other jurisdiction, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

24. **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada, and any other jurisdictions in which it is enforceable

25. **THIS COURT HEREBY REQUESTS** the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Proposal Trustee, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Proposal Trustee in any foreign proceeding, or to assist the Proposal Trustee and its agents in carrying out the terms of this Order.

26. **THIS COURT ORDERS** that the Company, the Proposal Trustee and the Purchaser shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

27. **THIS COURT ORDERS** that, without limiting the paragraph 26 hereof, any interested party (including the Company, Proposal Trustee and the Purchaser) may apply to this Court to seek advice and direction, or other relief, in respect of this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the relief sought or upon such other notice, if any, as this Court may order.

- 13 -

28.     **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01

a.m. Toronto time on the date of this Order without any need for entry and filing.

Jessica
Kimmel

Digitally signed
by Jessica Kimmel
Date: 2026.07.07
18:14:40 -04'00'

## SCHEDULE "A"

Court File No. BK-26-03354672-0031
Estate File No. 31-3354672

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### [COMMERCIAL LIST]

IN THE MATTER OF THE *BANKRUPTCY AND INSOLVENCY ACT,* R.S.C.
1985, c. B-3, AS AMENDED

AND IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A
PROPOSAL OF ECOIDEAS INNOVATIONS INC.

### PROPOSAL TRUSTEE'S CERTIFICATE

**RECITALS:**

A.  On March 31, 2026, Ecoideas Innovations Inc. (the "**Company**") filed a notice of intention to make a proposal under the *Bankruptcy and Insolvency Act*, naming Dodick Landau Inc. as proposal trustee (the "**Proposal Trustee**").

B.  On May 28, 2026, by order of this Honourable Court, the Court approved a "stalking horse" sale and investment solicitation process (the "**SISP**") and approved the stalking horse subscription agreement dated May 22, 2026 (the "**Stalking Horse Agreement**"), made by and between the Company, as vendor, and 1001611870 Ontario Inc., as purchaser (the "**Purchaser**").

C.  No qualified offers were received in the SISP at the bid deadline; and, accordingly, the Stalking Horse Agreement was declared the successful offer under the SISP.

D.  The Stalking Horse Agreement contemplated the closing of a transaction by way of approval and reverse vesting order (the "**RVO**") transferring certain assets and liabilities (the "**Excluded Assets and Liabilities**") of the Company to a newly incorporated subsidiary of the Company ("**ResidualCo**"), the issuance of new shares in the Company to the Purchaser (the "**New Shares**") and the cancellation of all other equity in Company such that, after closing, the Purchaser would own all equity in Company and any assets retained by the Company (the "**Retained Assets**") would be free and clear of all claims and encumbrances.

93862688.2

E. On July 7, 2026, the Court issued the RVO, approving the Stalking Horse Agreement and the transactions contemplated thereby, conditioned on the delivery of the Proposal Trustee's Certificate.

F. Capitalized terms not defined herein shall have the meaning given to them in the RVO including those defined by reference to the Stalking Horse Agreement.

**THE PROPOSAL TRUSTEE CERTIFIES** the following:

1. the Proposal Trustee has received, the Purchase Price as required on Closing pursuant to the terms of the Stalking Horse Agreement;

2. all other conditions to Closing as set out in the Stalking Horse Agreement have been satisfied or waived by the Company and the Purchaser; and

3. the Transactions contemplated by the Stalking Horse Agreement have been completed to the satisfaction of the Proposal Trustee.

This certificate was delivered by the Proposal Trustee at _____ [time] on July _____, 2026.

**DODICK LANDAU INC., solely in its capacity as Proposal Trustee of Ecoideas Innovations Inc. and not in its personal or corporate capacities**

Per: _____

Name:

Title:

IN THE MATTER OF THE BANKRUPTCY AND INSOLVENCY ACT, R.S.C. 1985, c. B-3, AS AMENDED

AND IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL OF ECOIDEAS INNOVATIONS INC.

Court File No. BK-26-03354672-0031
Estate File No. 31-3354672

| | ONTARIO<br>SUPERIOR COURT OF JUSTICE<br>[COMMERCIAL LIST]<br><br>Proceedings commenced in Toronto |
|---|---|
| | **APPROVAL AND REVERSE VESTING ORDER** |
| | **LOOPSTRA NIXON LLP**<br>130 Adelaide St. West – Suite 2800<br>Toronto, ON M5H 3P5<br><br>**R. Graham Phoenix**<br>Tel: (416) 746-4710<br>Fax: (416) 746-8319<br>Email: gphoenix@LN.law<br><br>*Lawyers for Ecoideas Innovations Inc.* |

4916-1108-2624, v. 1
93862688.2